THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PHILLIP GOGGINS, Appellant.

Second Department, July 16, 1973.

*William E. Hellerstein* and *Robert Kasanof* (*Steven Lloyd Barrett* of counsel), for appellant.

*Eugene Gold, District Attorney* (*Roger Bennet Adler* of counsel), for respondent.

SHAPIRO, J. The defendant's conviction of various counts of an indictment involving the sale and possession of narcotics stems from two sales allegedly made by him to an undercover police officer, Luther Barnes. On the first occasion Barnes allegedly had a conversation with the defendant inside a bar and then went outside with him to consummate the sale. On the second occasion Barnes met the defendant inside the bar and motioned to him and they both went outside, where they consummated another sale.

Other police officers operating as Barnes' back-up team were unable to make independent identifications of the defendant as the man they had seen in conversation with Barnes. During cross-examinations, Barnes testified that on the occasions of the sales he was accompanied to the bar by an informer who allegedly introduced him to the defendant and told the latter, "Abdul, take care of my man." The Trial Justice ruled that the informant's name did not have to be disclosed, as he was not present during the actual commission of the crimes.

The defendant was not in possession of any narcotics at the time of his arrest. He was employed as a hand baker at the times in question and had never previously been convicted of a crime. He contended that his implication in the charges against him was a case of mistaken identity. Under these circumstances, we hold that the trial court's refusal to compel disclosure of the informant's name, so that he could be produced as a witness by the defendant, constituted reversible error necessitating a new trial.

In *Roviaro* v. *United States* (353 U. S. 53), the court recognized the public purpose to be served in protecting the identity of informants, but expressly held that where the informant, as in that case, had played an active role in bringing about the petitioner's arrest for possession of narcotics *and was present with the petitioner at the time of the occurrence of the alleged crime,*

justice and fair play required his disclosure. Said the court (pp. 60–62):

" A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. * * *

" We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

In making such a balance in this case, we have concluded that disclosure of the informant's identity should have been ordered. Although the informant was not present at the actual sale, he allegedly introduced Barnes to the defendant and was present in the bar on each occasion when Barnes met the defendant. In the absence of other identification testimony, and in light of the defendant's denial that he had ever met Barnes, it is clear that disclosure of the informant's identity so that he could be called as a witness on the issue of mistaken identification is essential to a fair determination of this case.

We need not, in this case, set forth a general rule as to whether disclosure, when required, should take place in open court or at an *in camera* hearing. In *Alderman* v. *United States* (394 U. S. 165, 182–183, n. 14), there is an indication that compliance with *Roviaro* (*supra*) may be accomplished at an *in camera* hearing. (See concurring opinion by HOPKINS, J., in *People* v. *Delgado,* 40 A D 2d 554, for a discussion of procedures to be followed at such a hearing.)

In the Federal system, the Third and Sixth Circuits of the Court of Appeals have remanded cases to the trial courts for *in camera* hearings in situations in which the informants were allegedly active participants in the criminal activities. The purpose of the hearing in each case was to determine whether the informant's testimony would have been material and helpful to the defendant in preparing his defense and whether the informant would have been available to testify (see *United States* v. *Lloyd,* 400 F. 2d 414 [6th Cir.]; *United States* v. *Jackson,* 384 F. 2d 825 [3d Cir.]). However, later, in *United States*

v. *Barnett* (418 F. 2d 309), the Sixth Circuit, in a similar case, reversed and ordered a new trial because of the failure to call the informant and no mention was made of the possibility of an *in camera* hearing; nor did it refer to its earlier cases on the subject.

Other circuits of the Court of Appeals, in cases in which the informants were witnesses to the transactions, have simply reversed and ordered new trials, without directing an *in camera* hearing (see, e.g., *Velarde-Villarreal* v. *United States,* 354 F. 2d 9 [9th Cir.]; *Lopez-Hernandez* v. *United States,* 394 F. 2d 820 [9th Cir.]; *Gilmore* v. *United States,* 256 F. 2d 565 [5th Cir.]; cf. *United States* v. *Roberts,* 388 F. 2d 646 [2d Cir.]).

As the informant's testimony here will be concerned with the identification of the defendant and cannot well be given without a direct confrontation, a remand for an *in camera* hearing, even if otherwise proper, would not be feasible. In any event, if, contrary to the defendant's claim that he knows of no informer because he was never introduced to Barnes, the latter is telling the truth, there would be no public purpose served in withholding the name of the informer, since his identity would already be known to the defendant.

Accordingly, the judgment of conviction should be reversed, on the law, and a new trial ordered.

HOPKINS, Acting P. J. (concurring in part and dissenting in part). I agree with my brethren that the judgment of conviction must be reversed and a new trial ordered. I differ from them concerning the procedure to be followed on the new trial.

The identity of an informant must be disclosed to the defendant in a criminal action when it is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause" (*Roviaro* v. *United States,* 353 U. S. 53, 60–61). That admittedly general test is rounded out more significantly in the language of the court in *Wilson* v. *United States* (59 F. 2d 390, 392): "If what is asked is useful evidence to vindicate the innocence of the accused or lessen the risk of false testimony or is essential to the proper disposition of the case, disclosure will be compelled."

Nonetheless, the rule itself is but an exception to a larger doctrine — the common-law privilege extended to a police informer against disclosure (see 8 Wigmore, Evidence [McNaughton rev.], § 2394). That privilege is intended to encourage assistance to the State in rooting out and prosecuting crime; moreover, in modern context, the privilege protects the undisturbed use of undercover agents and ongoing investigations and

prevents retaliation against informers and their families by coercive means employed by the accused or his associates.

Thus, whether the exception allowing disclosure may be given effect becomes essentially a balancing process to strike the proper breaking point between the interest of the State and the interest of the individual—the traditional role of due process under the Constitution. It is the trial court which must decide whether the exception shall be recognized for the proper safeguard of the individual at the trial. In order that the balancing test can be fairly determined between the competing interests, the proceedings by which the test is carried out should be held *in camera,* without the presence of the prosecutor or the defendant and his counsel (cf. *People* v. *Delgado,* 40 A D 2d 554).[1]

*In camera* procedure is sanctioned by the Federal courts (*United States* v. *Jackson,* 384 F. 2d 825, cert. den. 392 U. S. 933; *United States* v. *Winters,* 420 F. 2d 523; cf. *United States* v. *Day,* 384 F. 2d 464, 470 [concurring opn.]; *United States* v. *Bell,* 464 F. 2d 667; *United States* v. *Slocum,* 464 F. 2d 1180). "Realistically, the trial court can perform its function only if it has access to more of the facts than it may ultimately be willing to reveal to the parties or to the public. To deny the judge the identity of the informer and whatever evidence he may be able to offer may prevent an effective evaluation of possible effect on the defendant's interests" (*United States* v. *Lopez,* 328 F. Supp. 1077, 1091).[2]

Moreover, the procedure has received approval in the Federal revised proposed Rules of Evidence. Rule 510 (subd. [c], par. [2]) provides that "the judge shall give the government an opportunity to show *in camera* facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the judge may direct that testimony be taken if he finds that the matter cannot be resolved satisfactorily upon affidavit. * * * Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the government. All counsel and parties shall be permitted to be present at every stage of proceedings under this subdivision except a showing *in camera,* at which no counsel or party shall be permitted to be present."

---

1. The absence of the defendant does not violate the confrontation clause of the Constitution of the United States (*McCray* v. *Illinois,* 386 U. S. 300, 313–314).

2. *In Camera* procedure has also been adopted in civil cases (*Westinghouse Elec. Corp.* v. *City of Burlington,* 351 F. 2d 762).

Hence, in this case I would direct that an *in camera* hearing be held in connection with the new trial, in order to determine whether disclosure should be required. The Trial Justice after obtaining the facts, is in a far better position to make that decision than we are on this record. I therefore concur in the reversal and the direction of a new trial, but dissent from the direction for disclosure without an *in camera* hearing, conducted under the conditions stated herein.

MUNDER, GULOTTA and CHRIST, JJ., concur with SHAPIRO, J.; HOPKINS, Acting P. J., concurs in the reversal and the direction of a new trial, but dissents from the direction for disclosure without an *in camera* hearing, with an opinion.

Judgment of the Supreme Court, Kings County, rendered June 11, 1971, reversed, on the law, and new trial ordered.