THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT LEE HAWKINS, Appellant.

Fourth Department, October 31, 1975

*Peter L. Yellin (Andrew C. Fine* of counsel), for appellant.

*Jack B. Lazarus (Edward J. Spires* of counsel), for respondent.

SIMONS, J. Defendant has been convicted after trial of criminal possession of a dangerous drug, third degree (Penal Law, former § 220.20, subd [b], par [i], heroin), criminal possession of a dangerous drug in the sixth degree (Penal Law, former § 220.05, marijuana) and criminal possession of a hypo-

dermic instrument. The third degree possession conviction must be reversed and a new trial granted at which the People must produce the informer, if he is available, or in the alternative, dismiss the first count of the indictment.

In July, 1973 the Narcotics Squad of the Rochester Police was investigating William Gary, also known as "Trim Trim", the defendant's brother, and a known user and seller of drugs. "Trim Trim" lived at 429 Lake Street with Carol Lewin. On July 19 the police sent an informer to the apartment to purchase drugs and on the strength of that purchase the police obtained a no-knock search warrant for the premises. They returned there around 9 A.M. on the next day, July 20. The informer went to the scene with Detective Luciano and then went upstairs to the apartment to make a "buy". When he returned the informer told Detective Luciano that "Trim Trim", Carol Lewin and an unknown third person were in the apartment but that "Trim Trim" was leaving the apartment to obtain another supply of drugs. Shortly thereafter, the police saw "Trim Trim" leave the apartment, enter his car and drive away. The police were unable to determine whether anyone else was with him. About 45 minutes later, "Trim Trim" returned to the apartment with an unidentified black male about six feet tall who was carrying a striped bag. The two men went in the front door of 429 Lake Avenue. Officers D'April and LaChimia followed immediately after them, broke open the door of the apartment and ran inside. The door of the apartment opened onto a center hallway. On one side of the hall was a bedroom with a bath off the bedroom. On the other side towards the front of the house was a living room with the kitchen off the living room. As the officers broke in they observed but were unable to recognize a black male running from the bedroom to the living room. Officer D'April entered the bedroom and saw "Trim Trim" throwing bundles of narcotics out the window. He also observed a striped bag and two brown bags on the bed, all empty, and bundles of narcotics in the air, on the bed and on the floor. Carol Lewin was in the bathroom.

Officer D'April's partner entered the apartment behind him and went into the living room-kitchen area where he met defendant coming out of the kitchen. A body search of defendant produced two marijuana cigarettes in his possession. Detective Luciano was outside the house at the time and testified that as he approached the house, he saw a man whom

he identified as defendant throw a bundle containing a hypodermic needle and set of works out of the kitchen window.

The defense rested on the theory that there was a fourth man in the apartment who helped "Trim Trim" acquire the drugs and that he escaped from the apartment when the police entered. In support of this, defendant testified that he was in the kitchen eating when his brother and another man returned, that he did not see them, did not go into the bedroom and did not have possession of the heroin. Carol Lewin testified that there was a fourth man in the apartment who escaped as the police entered.

"Trim Trim" died within a week of the arrest but defendant produced two witnesses, his mother and a cellmate of "Trim Trim", who testified that "Trim Trim" told them that a man named Reese was with him on the day in question. Reese was called by defendant and testified that he lived at 429 Lake Avenue "off and on" and that he was 5 feet 11 inches tall. He refused to answer any other questions on the grounds of self incrimination.

Defense counsel tried to elicit the name of the informer when examining the police officers but he was foreclosed by rulings of the court. During his examination of "Trim Trim's" cellmate, he learned the name of a suspected informer and after interviewing him in Attica during the trial, counsel advised the court the informer could produce exculpatory evidence on defendant's behalf. He moved for a continuance to produce the witness but his motion was denied.

It is a crime to have "physical possession or otherwise to exercise dominion or control" over drugs (Penal Law, § 10.00, subd 8; Penal Law, § 220.00 *et seq.).* The prosecution's case necessarily rests upon circumstantial proof that this defendant had constructive possession of the heroin found in the apartment (see *People v Siplin,* 29 NY2d 841; *People v Reisman,* 29 NY2d 278, 285–287; *People v Camacho,* 47 AD2d 527; *People v Santiago,* 45 AD2d 1041).

There was proof that (1) at a time when three people were in the apartment, one man left and that thereafter two men returned, (2) one man other than "Trim Trim" and six feet tall (defendant stood in the courtroom but his height does not appear in the record) carried a striped bag into Carol Lewin's apartment the morning of July 20, 1973, (3) that when the police entered they saw a black male run from the bedroom to the kitchen, (4) that "Trim Trim" was found throwing bundles of heroin out of the bedroom window and defendant was found

coming out of the kitchen, (5) no other man was found in the apartment or seen leaving it and (6) defendant threw a bundle containing narcotic instruments out the kitchen window. The charge rests upon the inference that defendant was the only male in the apartment other than "Trim Trim" and that he had constructive possession of the heroin. Applying the accepted rules of circumstantial evidence (see *People v Benzinger*, 36 NY2d 29, 32), and viewing the facts most favorably to the People *(People v Cleague,* 22 NY2d 363, 366), the evidence was sufficient to support the jury's verdict, although the issue is not free from doubt. The possible testimony of the informer, therefore, takes on added significance because he may be able to identify the parties in the apartment at the time he made the purchase on the morning of the 20th.

Defendant apparently produced all the witnesses known to him that could support his contention that Terrence Reese was the man with "Trim Trim" and the fourth man in the apartment at the time the police entered. The police did not have all the windows under observation and the police descriptions of the man carrying the striped bag and the man who ran across the hall from the bedroom to the living room are limited. Under the circumstances, it was error to deny discovery of the informer's identity or to deny a continuance for his production by defendant.

In *People v Goggins* (34 NY2d 163, 169–170), the court stated: "Undoubtedly the strongest case for disclosure is made out when it appears that the informant was an eyewitness or a participant in the alleged crime [citations omitted]. But disclosure of the informant's identity may also be appropriate when, by introducing the parties to each other or *performing some other preliminary function* he may be considered to have been 'an active participant in setting the stage' [citations omitted]" (emphasis added). (See, also, *Roviaro v United States,* 353 US 53; *People v Gower,* 45 AD2d 188; and cf. *People v Law,* 48 AD2d 228.)

The informer in the present case was sent to the apartment to establish the presence of "Trim Trim" and of drugs in the apartment. His testimony is relevant to the guilt or innocence of defendant since it may establish the presence of another man in the apartment prior to the entry by the detective.

Since the issue is identity, no purpose will be served by remanding the case for an *in camera* hearing and a new trial is directed on the criminal possession, third degree charge (see *People v Goggins,* 42 AD2d 227, affd 34 NY2d 163, *supra).*

The proof was sufficient to establish the unlawful possession of a hypodermic needle (see *People v Lewin,* decided herewith). We have examined the other points raised in defendant's brief and find them to be without merit.

The judgment should be modified insofar as it finds defendant guilty of the first count of the indictment, criminal possession of a dangerous drug, third degree, and a new trial granted as to that count of the indictment, and otherwise affirmed. Defendant is remanded for resentencing on counts two and three of the indictment.

MARSH, P. J., MOULE, MAHONEY and DEL VECCHIO, JJ., concur.

Judgment unanimously modified in accordance with opinion by SIMONS, J. and as modified affirmed.